FILED'11 APR 07 13:54USDC-ORP

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim No. 10-339-HA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| JEFFERSON BRYANT DAVIS, | |
| Defendant. | |

HAGGERTY, District Judge:

Defendant Jefferson Bryant Davis is charged with six counts related to the sex trafficking

of minors. Defendant filed a Motion to Suppress Evidence [23]. This court held evidentiary

hearings on March 28 and 29, 2011, at which law enforcement officers, a defense investigator,

and defendant presented testimony. For the following reasons, defendant's Motion to Suppress is

GRANTED IN PART. Additional evidence is required to resolve the remaining aspects of

defendant's motion.

## BACKGROUND

Early on November 1, 2009, Portland Police Officer Gary Doran observed a maroon

Pontiac automobile (Pontiac) driving at a high rate of speed on the freeway off-ramp of I-205.

1 - OPINION AND ORDER

Officer Doran was driving eastbound on SE Washington Street toward a light-controlled intersection where the freeway off-ramp meets the street. The light was green for Officer Doran's direction of travel, and red for the Pontiac. Officer Doran observed the Pontiac run through the red light. He noticed that the driver was an African-American male wearing a red sweatshirt, and that his passenger was also an African-American male wearing a black sweatshirt.

Officer Doran pursued the Pontiac with his overhead lights and siren activated. The Pontiac rolled through another red light and turned left onto SE Stark Street. The Pontiac accelerated and ran through a third red light where SE Stark Street meets the southbound off-ramp of I-205. Officer Doran radioed that he was in pursuit of a reckless driver.

The Pontiac ran a fourth red light at SE Stark Street and 92nd Avenue. As the Pontiac approached 82nd Avenue, Officer Doran decided to terminate the high speed chase, radioed for assistance, and slowed his car. The Pontiac continued towards 82nd Avenue, but the driver began to lose control. The Pontiac fish-tailed through the intersection, drove onto the sidewalk, hit a wall, and crashed into a parked truck. Officer Doran reactivated his lights and siren as he approached the crash. As the driver and passenger exited the Pontiac, Officer Doran shouted "Stop! Police! You are under arrest!" The driver and passenger ran west on SE Stark Street. Officer Doran tried to pursue them, but lost sight of the men as they rounded the corner at 78th Avenue.

Additional police officers arrived. Officer Doran saw an African-American male (defendant) wearing a white tank top running across the 8000 block of SE Washington Street. Several officers took defendant into custody, patted him down for weapons, and put him in the patrol car. The officers asked defendant if he was in the car that crashed, and defendant denied any involvement.

2 - OPINION AND ORDER

The officers searched the area. They found a red sweatshirt, but no sign of the passenger. One of the officers transported defendant to the East Precinct.

Officer Doran walked over to the Pontiac and noticed that the doors were open. He heard a cellular telephone (phone) ringing. He also saw papers bearing the names of defendant and Ellis Mathews, photographs of children, high heels, and a receipt from a jewelry store with defendant's name. Officer Doran removed the photos, receipt, and phone, and placed them in his patrol car. Officer Doran then drove to the East Precinct to confirm if the man in custody was the man he observed in the Pontiac.

While driving to the precinct, the seized phone rang repeatedly. Officer Doran answered the phone by saying "what's up." A female voice asked "where are you" or "who is this?" The record is unclear whether the female or Officer Doran hung up the phone. Officer Doran then called the number back using the seized phone and heard a message recording for the Montavilla Motel, located at 320 SE 99th Avenue. At some point, Officer Doran searched the phone and noticed that about a dozen calls had come in to the phone from the Montavilla Motel number. Believing that the driver or passenger of the Pontiac could be located at the motel, Officer Doran diverted his route to visit the Montavilla Motel.

At the motel, Officer Doran spoke to the manager. Based on the names obtained from the papers in the Pontiac, Officer Doran asked the manager if defendant or Ellis Mathews had rented a room at the motel. The manager told Officer Doran that Ellis Mathews had rented room 45, and that Mathews was the only person listed on the registration. Officer Doran then requested a key for room 45 because he had heard a female's voice on the phone, and believed that she was trespassing.

3 - OPINION AND ORDER

The officers knocked on the door of room 45. Two juvenile girls, VCC and CM, answered the door. The officers told the girls that they were trespassing, and asked for their names. After the girls identified themselves, the officers learned that they were listed as missing in the law enforcement data system. When questioned, the girls said they were waiting for "a black guy named J.B."

The officers showed the girls a photograph of defendant, and the girls identified him as "J.B." The girls told the officers that "J.B." was wearing a red sweatshirt and drove a maroon car. The officers found one condom in each of the girls' pockets. The girls said that "J.B." made them buy condoms at the 7-11 store. Both girls were then transported to the East Precinct.

When he arrived at the precinct, Officer Doran provided defendant with warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and interrogated him. Defendant admitted to driving the Pontiac. He denied having a passenger in the car. Officer Doran asked defendant if he owned the seized phone. Defendant said yes, and thanked the officer for returning the phone.

Two officers then interviewed the girls. The girls explained that defendant bought new clothing for the girls (including underwear, high-heeled shoes, pants, and jackets) and gave them money to buy condoms. No statements regarding prostitution or sex trafficking were made at this time.

Several months later, VCC voluntarily turned herself in as a runaway in California. She was brought to Oregon and interviewed by Detective Jeff Staples of the Salem Police department. She did not admit any involvement in prostitution. Two weeks later, VCC ran away from home again. She was later picked up at a transit station by Salem Police Officer Stephen Chancellor, who brought her into the adjacent satellite office for the Salem Police. While

4 - OPINION AND ORDER

waiting for VCC's parents, Officer Chancellor spoke with VCC about the circumstances that caused her to run away. During that conversation, VCC made incriminating statements against defendant.

## DISCUSSION

Defendant moves to suppress all physical evidence and statements obtained as a result of the warrantless search and seizure of his phone. The government attempts to justify the search based on several exceptions to the warrant requirement, and asserts that the statements made by VCC and CM were sufficiently attenuated from the illegal search to be admissible.

### 1.    Initial seizure of the phone

Although defendant did not initially challenge the constitutionality of the seizure of his phone, he raised that argument during the second evidentiary hearing. Nevertheless, this court concludes that the phone was lawfully seized as part of an inventory search before the crashed vehicle was towed away. *See United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008) (holding that the police may perform an inventory search of a lawfully impounded vehicle for the purpose of determining its condition and contents at the time of impounding). Officer Doran testified that the Portland Police Bureau has a policy that requires officers to collect any valuable items from a vehicle before it is towed. This policy is sufficient to justify an inventory search. *United States v. Penn*, 233 F.3d 1111, 1116-17 (9th Cir. 2000).

However, a lawful inventory search does not authorize an officer to examine the contents of a cell phone. *United States v. Wall*, No. 08-60016-CR, 2008 WL 5381412, at *3-4 (S.D. Fla. Dec. 22, 2008) (declining to justify search of cell phone as an inventory search because the officers had no need to document the phone numbers, messages, and other data to properly identify the suspect's property). Therefore, the issue presented is whether the government can

5 - OPINION AND ORDER

prove, by a preponderance of the evidence, that the subsequent search of the phone was justified by an exception to the warrant requirement.

**2.    Search of the phone**

A person has a reasonable expectation of privacy in his or her personal cell phone, including call records and text messages. *United States v. Finley*, 477 F.3d 250, 259-60 (5th Cir. 2007); *see also City of Ontario, Cal. v. Quon*, 130 S. Ct. 2619, 2630 (2010) ("Cell phone and text message communications are so pervasive that some persons may consider them to be essential means or necessary instruments for self-expression, even self-identification. That might strengthen the case for an expectation of privacy."). Accordingly, the government may not answer a defendant's cell phone absent a warrant or an exception to the warrant requirement. *United States v. Kim*, 803 F. Supp. 352, 361-62 (D. Haw. 1992) (holding that a lawfully seized cell phone was improperly searched when an officer answered the defendant's ringing phone without a warrant); *see also United States v. Mercado-Nava*, 486 F. Supp. 2d 1271, 1277-79 (D. Kan. 2007) (applying general warrant requirements to searches of cell phones).

Courts have generally permitted law enforcement officers to conduct warrantless searches of cell phones in cases involving drug-trafficking, where evidence of the crime is likely stored on the phones. *United States v. Quintana*, 594 F. Supp. 2d 1291, 1299 (M.D. Fla. 2009) (collecting cases); *United States v. Santillan*, 571 F. Supp. 2d 1093, 1100-01 (D. Ariz. 2008) (same); *see also United States v. Wurie*, 612 F. Supp. 2d 104, 110 (D. Mass. 2009) (upholding search as reasonable where officers retrieved a phone call during booking, and then viewed a screen displaying a picture of a woman, a phone number, and the words "my house" because the officers reasonably believed that the stored phone number would lead them to the location of the suspect's drug stash). Drug-trafficking circumstances can also justify the warrantless search of a cell

6 - OPINION AND ORDER

phone because recent call records can be easily destroyed, and cell phones provide the means for drug smugglers to coordinate efforts that could endanger officers and the public. *See Santillan*, 571 F. Supp. 2d at 1100-04 (upholding search based on exigent circumstances, plain view, search incident to arrest, and inevitable discovery). However, concerns regarding the preservation of evidence within a suspect's cell phone are less prevalent in cases involving non-drug-related crimes. *Quintana*, 594 F. Supp. 2d at 1300 (holding that search of cell phone was not justified after arrest for driving with a suspended license).

In this case, the government seeks to justify the warrantless search of defendant's phone based on the automobile exception, exigent circumstances, the plain view exception, inevitable discovery, and attenuation.

### A.    Automobile exception

Cell phones may be searched for call records and other data pursuant to the automobile exception to the warrant requirement. *United States v. James*, No. 1:06CR134 CDP, 2008 WL 1925032, at *4 (E.D. Mo. April 29, 2008); *United States v. Fierros-Alvarez*, No. 07-40153-01-SAC, 2008 WL 1826188, at *5 (D. Kan. April 23, 2008).

The automobile exception permits police to search a vehicle that is readily mobile and if probable cause exists. *United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008) (citation omitted). To meet the probable cause requirement, the court must determine if, under the totality of circumstances, there was a fair probability that contraband or evidence of a crime would be found in the car searched. *Id.* (citation omitted).

It is unclear whether Officer Doran believed that the Pontiac reasonably appeared to be mobile when he seized the phone and answered the call. *See United States v. Hatley*, 15 F.3d 856, 859 (9th Cir. 1994) (holding that the automobile exception applies to inoperable cars that

7 - OPINION AND ORDER

reasonably appear mobile to the officers). However, the government has failed to meet its

burden on the probable cause requirement. The government contends that "Officer Doran could

search the entire contents of the cell phone for physical addresses of the suspect/owner, incoming

and outgoing calls, photographs to determine the identify and or location of the suspect who

committed the traffic offenses and or prove his attempt to elude on foot." Gov.'s Resp. at 8. This

argument is unpersuasive. When Officer Doran searched the phone, defendant was already in

custody and en route to the precinct. The identity of the driver could be confirmed once Officer

Doran confronted defendant with the cell phone, or inquired about its owner. Moreover, Officer

Doran testified that he had no reason to suspect that defendant committed any crimes beyond the

reckless driving offenses, and had no probable cause to believe that contraband would be located

in the vehicle. The automobile exception is inapplicable.

### B.    Exigent circumstances

Exigent circumstances may also justify the warrantless search of a cell phone. *See, e.g.,*

*United States v. Lottie*, No. 3:07cr51RM.,2008 WL 150046, at *3 (N.D. Ind. Jan.14, 2008)

(upholding warrantless search of the suspect's cell phone based on exigent circumstances,

including concern for officer safety and the public in the midst of a large drug transaction and

likelihood of counter-surveillance in the immediate vicinity); *Santillan*, 571 F. Supp. 2d at 1100-

04 (upholding search based on exigent safety concerns and likely destruction of call records as

evidence of drug-trafficking); *United States v. Parada*, 289 F. Supp. 2d 1291, 1303-04 (D. Kan.

2003) (noting that cell phones have limited memory, so officers may retrieve stored numbers of

incoming calls to prevent the destruction of evidence).

To justify a warrantless search based on exigent circumstances, the government must

show that: "(1) considering the totality of the circumstances, law enforcement had an objectively

8 - OPINION AND ORDER

reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." *United States v. Reyes-Bosque*, 596 F.3d 1017, 1029 (9th Cir. 2010) (citation omitted). Exigent circumstances arise when a reasonable person would believe that the warrantless entry was necessary to prevent physical harm, the destruction of evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts. *United States v. Brooks*, 367 F.3d 1128, 1135 (9th Cir. 2004) (citation omitted).

Even if the officers subjectively desired to obtain evidence, the reasonableness of their actions is judged by an objective standard. *Reyes-Bosque*, 596 F.3d at 1029-30 (citation omitted). The critical time for determining whether any exigency exists is the moment the officer makes the warrantless entry. *Id.* at 1030.

The government contends that Officer Doran was in "hot pursuit" of the driver of the Pontiac, and needed to verify if the man they had in custody (defendant) was the reckless driver, or if the driver remained at large and continued to pose a danger to the community. However, the phrase "hot pursuit" implies some sort of chase. *United States v. Struckman*, 603 F.3d 731, 744 (9th Cir. 2010). At the time of the warrantless search, the chase had ended. Defendant was in custody.

Moreover, the cases in which cell phones have been searched pursuant to exigent circumstances involved suspected drug trafficking and the limited search of the phone's recent contact list. Here, the evidence of the incoming number could have been written down, or the phone could have been turned off to preserve the call list. The government cannot establish "real immediate and serious consequences" to justify the warrantless search in this case. *See Fisher v.*

*City of San Jose*, 509 F.3d 952, 960 (9th Cir. 2007) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 751 (1984)).

### C.    Plain view

After the first day of testimony, the government filed an Amended Response to defendant's suppression motion raising the plain view exception. Under the plain view doctrine, law enforcement officers may seize items if (1) the officers are lawfully in a position from which they view an object, (2) the incriminating character of the object is immediately apparent, and (3) the officers have a lawful right of access to the object. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). However, while this doctrine permits the seizure of incriminating evidence, it does not authorize a warrantless search of the item for concealed evidence. *United States v. Miller*, 769 F.2d 554, 557 (9th Cir. 1985).

The government's argument fails on two grounds. First, the incriminating nature of the phone was not immediately apparent. Officer Doran did not suspect that defendant was involved in drug-trafficking, where cell phones are often tools of the drug trade. *See United States v. Martinez*, 938 F.2d 1078, 1083-84 (10th Cir. 1991). Second, Officer Doran's search of the phone was not a minimal intrusion. Recordings played during the evidentiary hearings confirmed that Officer Doran searched the contents of the phone. He reported to dispatch that "there's about a dozen calls on this cell phone" from the Montavilla Motel. Officer Doran did not merely view the number in plain view on the outside of the phone, he viewed the concealed contents of the phone. The plain view exception does not justify the search.

### D.    Inevitable discovery and attenuation

The government has failed to demonstrate that an exception to the warrant requirement justified the search of defendant's phone. However, if the government can establish by a

preponderance of the evidence that the unlawfully obtained information would have been inevitably discovered by lawful means, then the evidence should not be suppressed. *Nix v. Williams*, 467 U.S. 431, 444 (1984). The government's inevitable discovery must not be speculative, but rather supported by "demonstrated historical facts capable of ready verification and impeachment." *United States v. Young*, 573 F.3d 711, 722-23 (9th Cir. 2009) (quoting *Nix*, 467 U.S. at 444-45). Courts have applied this doctrine to excuse improper searches of cell phones. *See United States v. Morales-Ortiz*, 376 F. Supp. 2d 1131, 1143 (D. N.M. Nov. 4, 2004) (holding that lawfully seized cell phone in plain view was impermissibly searched without a warrant, but the search was justified under the inevitable discovery doctrine because a warrant was later obtained).

The government asserts that it would have inevitably obtained the incriminating statements from VCC and CM on November 1, 2009 absent the unlawful phone search and the officers' arrival at the Montavilla Motel. This conclusion is not supported by the evidence. The improper search of defendant's phone directed the officers to the Montavilla Motel where VCC and CM were discovered. *See United States v. Johns*, 891 F.2d 243, 245 (9th Cir. 1989) (holding that a causal link exists between the illegal action and the tainted evidence when "the illegal activity tends to significantly direct the investigation to the evidence in question") (citation omitted). The government has produced no evidence showing that the discovery of the girls would have occurred absent the illegal search. The statements by VCC and CM on November 1, 2009 must be suppressed as fruit of the illegal search. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

The government also asserts that VCC's statements in April 2010 are sufficiently attenuated from the illegal search to be admissible. After reviewing the record and arguments

11 - OPINION AND ORDER

from counsel, this court concludes that further proceedings are necessary to resolve this aspect of

defendant's suppression motion. The court must ascertain whether VCC's statements in April

2010 were voluntarily made and sufficiently attenuated from the illegal search to be admissible.

Accordingly, defendant's Application for Writ of Habeas Corpus Ad Testificandum [30] is

granted. VCC must appear in my courtroom on April 14, 2011 at 9:00 a.m. to respond to

questioning regarding her recent statements. This court will appoint counsel to VCC to provide

assistance during VCC's testimony. Counsel will be appointed from the United States District

Court of Oregon's approved list of juvenile defense attorneys.

## CONCLUSION

For the reasons provided, defendant's Motion to Suppress Evidence [23] is GRANTED

IN PART. All physical evidence and statements by VCC and CM obtained on November 1,

2009 are suppressed.

The court requires a further evidentiary hearing to evaluate the admissibility of statements

made by VCC after November 1, 2009. Defendant's Application for Writ of Habeas Corpus Ad

Testificandum [30] is therefore GRANTED. VCC is ordered to appear in my courtroom at 9:00

a.m. on April 14, 2011. This court appoints counsel to VCC from the United States District

Court of Oregon's approved list of juvenile defense attorneys. VCC's appointed counsel must

accompany her to the hearing.

IT IS SO ORDERED.

DATED this 7 day of April, 2011.

Ancer L. Haggerty
United States District Judge

12 - OPINION AND ORDER