**Susan F. Wilk**
**Assistant Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR 97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: Susan_wilk@fd.org**

**Attorney for Defendant**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JEFFERSON BRYANT DAVIS,**<br><br>**Defendant.** | **Case No. 3:10-cr-339-SI**<br><br>**MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** |

## INTRODUCTION

The defendant, Jefferson B. Davis, through his attorney, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for an order reducing his sentence to time served.

A combination of circumstances presents extraordinary and compelling reasons to grant the motion. First, the Bureau of Prisons (BOP) failed to protect Mr. Davis from a brutal ambush attack in which he was repeatedly stabbed by a group of inmates at United States Penitentiary (USP) Beaumont. He lost consciousness and was treated in intensive care at a hospital for his life-threatening injuries. Back at USP Beaumont, he received almost no follow up care, and the

BOP did not hold any of his assailants accountable. Because of this experience, the conditions of Mr. Davis's confinement have been much harsher than the Court could have foreseen at the time of sentencing. Second, Mr. Davis's father, Jefferson Davis Sr., suffers from debilitating and serious physical and mental health issues. Since Mr. Davis's last compassionate release motion in May 2023, Mr. Davis Sr.'s health has rapidly declined, and he lost his permanent residence. In severe and chronic pain and requiring a wheelchair and an oxygen tank, Mr. Davis, Sr. requires far more care than the four hours per week he currently receives through state providers, and no other caregiver is available to Mr. Davis, Sr. Taken together, these satisfy the "extraordinary and compelling reasons" standard under § 3582(c)(1)(A)(i). *See* U.S.S.G. § 1B1.13 (elaborating upon the goals of § 3582(c)(1)(A)(i)).

This Court should also find the 18 U.S.C. § 3553(a) factors support release. Mr. Davis has been incarcerated since August 12, 2010. This amounts to 191 months of actual incarceration or approximately 90% of his 240-month sentence.[1] A time-served sentence would release Mr. Davis only a year and seven months before he would become eligible for community placement. Additionally, since transferring to FCI Marion, despite not qualifying for a reduction in his sentence under the First Step Act (FSA),[2] Mr. Davis has completed and participated in extensive FSA rehabilitative programming. He has also significantly improved his BOP disciplinary record. Considering all the circumstances, a reduction to time served is "sufficient, but not greater than necessary" to achieve the goals set out in 18 U.S.C. § 3553(a).

---

[1] Based on his projected release date of March 29, 2028. *See* https://www.bop.gov/inmateloc/ (last accessed Aug. 8, 2026).

[2] Mr. Davis's crime of conviction precludes him from earning FSA credits.

## PROCEDURAL HISTORY

Mr. Davis was arrested on the charges underlying the sentence in this matter on August 12, 2010. ECF 7. On October 25, 2011, following his guilty plea to sex trafficking of a minor in violation of 18 U.S.C. § 1591(a) and (b)(1), this Court sentenced Mr. Davis to 240 months in prison and five years of supervised release. ECF 198. On May 11, 2023, Mr. Davis moved pro se for compassionate release, arguing that his family circumstances, including his need to care for his ailing father and the harsh conditions of confinement resulting from the repeated 22-hour lockdowns during the COVID-19 pandemic constituted extraordinary and compelling circumstances. ECF 207. This Court denied Mr. Davis's motion without prejudice on July 26, 2023, finding that Mr. Davis's early release at that time would undermine the 18 U.S.C. § 3553(a) sentencing factors. ECF 219.

On June 3, 2026, Mr. Davis submitted a written request for compassionate release to the warden of FCI Marion. Mr. Davis based the request on being the only family member available to provide care for his ailing father, whose health has deteriorated following his 2023 request. *See* Ex. A (Jefferson Davis Memo. Davis (June 16, 2026)). The warden denied Mr. Davis's request on July 16, 2026, because Mr. Davis's request related to the need to be a caregiver for a parent, which the BOP found was not a qualifying family member. *Id.*

## RELEVANT FACTS

**A. While incarcerated at USP Beaumont, a group of inmates ambushed Mr. Davis, brutally stabbing, kicking, and punching him. The BOP failed to protect Mr. Davis from the attack, provide proper medical care after the attack, or take action against his attackers.**

On December 1, 2025, several inmates at United States Penitentiary (USP) Beaumont's secure housing units brutally stabbed, kicked, and punched Mr. Davis before leaving him to bleed out. *See* Ex. B (BOP Medical Records (USP Beaumont)) at 151, 153. At least two of Mr. Davis's assailants were armed with shanks, while another held his door open. *See id.*

Following the attack, Mr. Davis, who had lost consciousness, received emergency treatment at Christus-St. Elizabeth Hospital. *See id.* at 155-67. His injuries included multiple stab wounds, a collapsed lung, blunt-force head trauma, a swollen left eye and lips, and a dislodged molar. *Id.* Mr. Davis spent two days and three nights on oxygen in the intensive care unit at Christus-St. Elizabeth. *Id.* at 125. Although he suffered complications from his grave injuries, he received only one follow-up appointment with a staff doctor at USP Beaumont—just after hospital discharge on December 4, 2025. *Id.* at 1-7. That person prescribed Tylenol for Mr. Davis's pain. To the best of undersigned counsel's knowledge, information, and belief, the BOP did not and has not taken action against Mr. Davis's attackers.

**B. Mr. Davis's father is without a permanent home, is too debilitated to care for himself, and has no family members to help him.**

When Mr. Davis filed his original compassionate release motion in 2023, the health of his father, Jefferson Davis Sr., was already a topic of concern. *See* ECF 207. Since then, Mr. Davis Sr.'s health has deteriorated—especially his mobility, memory, and lung capacity—such that he is incapable of caring for himself. *See* Ex. C (Investigation Report (July 6 & 7, 2026)). Because he cannot work, he lost his permanent residence. *See id.*

Mr. Davis Sr. requires an oxygen machine and a wheelchair and is in persistent and acute pain. *Id.* He has been diagnosed with Stage 4 severe chronic obstructive pulmonary disease (COPD), chronic respiratory failure, seizures, chronic pain syndrome, chronic pancreatitis, gastroesophageal reflux disease (GERD), biliary obstruction, dyspnea, and pulmonary emphysema. Ex D[3] (Jeffery Davis Sr. Medical Records); Ex. C. He has endured multiple major surgeries and extended hospitalizations, including a recent (August 5, 2026) volume lung reduction surgery that required a twelve-day hospital stay. Ex. D at 2719, 2039, 1585, 1183. He now needs a wheelchair because of foot drop, a form of paralysis caused by nerve damage. *Compare id.* at 3791 *with id.* at 1367; *see also* Ex. C ("[H]e is currently in an electric wheelchair."). Mr. Davis Sr.'s poor physical health is exacerbated by his short-term memory loss, depression, and substance use disorder. *Id.* at 1819; *see id.* at 1632.

Mr. Davis Sr. requires daily caregiving assistance, and his son is the only family member who can provide that assistance. Ex. C; Ex. D at 1819. Because of Mr. Davis Sr.'s short-term memory loss, he needs someone to remind him to take his many medications. *Id.* He needs help with activities of daily living—cooking, cleaning, shopping for groceries, bathing, and dressing. *Id.* at 1819-20. He has difficulty standing and has fallen four times this year. *Id.* at 1367. Because of his respiratory conditions, he cannot hold a conversation for longer than a few minutes. *Id.* at 1819-20, 1855. Currently, he receives care four hours per week, but housing instability has created more barriers to receiving even that care. *See* Ex. C. His shelters have been closing, most recently in July 2026. *See, e.g.*, Ex. D at 1855 (noting the closure of Do Good Multnomah

---

[3] Because the medical records are substantial, for the convenience of the court and opposing counsel, a PDF of the pages cited in this motion will be emailed. The full copy of the records is too large to submit electronically and will be provided to the court and opposing counsel via USB drive.

Shelter (Roseway location) on Mar. 23, 2026), 1243 (noting on July 2, 2026, that Mr. Davis, Sr. is "[v]ery worried because the current shelter he is at will be closing this month[.]"). No other caregiver is available to support Mr. Davis, Sr. Ex. C.

**C. Since transferring to FCI Marion, Mr. Davis has participated in rehabilitative programming and has a nearly spotless disciplinary record.**

In March 2026, Mr. Davis transferred from USP Beaumont to Federal Correctional Institution (FCI) Marion. *See* Ex. E (BOP Medical Records (FCI Marion)). Since his transfer, Mr. Davis, who is ineligible for FSA credits, has completed and participated in several FSA rehabilitative programming opportunities. He is enrolled and actively participating in the Residential Drug Abuse Program (RDAP),[4] and completed an anger management course and the National Parenting from Prison Program.[5] He also has completed Adult Continuing Education (ACE) classes. Mr. Davis's qualification for placement at FCI Marion is also probative of his rehabilitation, indicating the BOP determined that Mr. Davis's behavior warranted a less restrictive placement.

---

[4] "The Residential Drug Abuse Treatment Program (RDAP), codified at 18 U.S.C. § 3621(e), is an intensive cognitive behavioral therapy program offered in some Bureau of Prisons facilities." U.S. Sent'g Comm'n, *Residential Drug Abuse Treatment Program*, (Jul. 22, 2024), https://www.ussc.gov/education/residential-drug-abuse-treatment-program. Research shows that RDAP participants are 27 percent less likely to recidivate than similarly situated inmates. U.S. Sent'g Comm'n, *Recidivism and Federal Bureau of Prison Programs: Drug Program Participants Released in 2010* (Overview) (May 17, 2022), https://www.ussc.gov/research/research-reports/recidivism-and-federal-bureau-prisons-programs-drug-program-participants-released-2010.

[5] *See* U.S. Dep't Just., *First Step Act Approved Programs Guide* 4, 20, 24 (Jan. 2024), *available at* https://www.bop.gov/inmates/fsa/docs/fsa-approved-program-guides-en.pdf.

### D. Release plan

Mr. Davis's release plan would require him to reside in a community placement such as the Northwest Regional Reentry Center (NWRRC) for up to 120 days. While at the NWRRC, Mr. Davis can provide care for his father and receive help finding employment and a place to live.[6]

## STATUTORY FRAMEWORK

The compassionate release statute authorizes district courts to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). In assessing whether to grant compassionate release, courts consider two factors: "(1) whether 'extraordinary and compelling reasons warrant such a reduction'; and (2) 'the factors set forth in section 3553(a) to the extent they are applicable.'" *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). A sentence reduction also must be consistent with the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13. The Sentencing Commission amended § 1B1.13 in November 2023 to fulfill its statutory obligation to "describe what should be considered extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t).

In the policy statement, the Commission included a catchall "other reasons" category that codified the courts' authority to determine "extraordinary and compelling reasons" based on a "combination of circumstances" beyond those specifically listed. U.S.S.G. § 1B1.13(b)(5) (allowing a finding of extraordinary and compelling reasons when "[t]he defendant presents any

[6] NW Regional Re-entry Ctr., *Programs & Services*, (2024), https://nw-rrc.org/programs-services/ ("At NWRRC, we support individuals on their journey from incarceration to community reintegration through a variety of re-entry programs tailored to different populations.").

other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."). The Commission intended this expansive provision to afford courts the flexibility and discretion developed during the interim before the effective date of § 1B1.13, because "judges are 'in a unique position to determine whether the circumstances warrant a reduction." U.S. Sent'g Comm'n, *Amendments to the Sentencing Guidelines,* at 3, 5 (April 27, 2023) (amendments to U.S.S.G. § 1B1.13) (citing U.S. Sent'g Comm'n, *Compassionate Release Data Report, Fisal Years 2020 to 2022* (Dec. 2022)); *see also United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (prior to the effective date of the new U.S.S.G. § 1B1.13, noting that "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.") (quoting *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020)).

The second statutory prong—analysis of the § 3553(a) factors—requires a court to consider, *inter alia*, the defendant's history and characteristics and the need for the sentence to provide just punishment, deterrence, public protection, and provide the defendant with access to "educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). In considering these factors, a court has "broad discretion to consider all relevant information," including post-sentencing factual developments. *Concepcion v. United States*, 597 U.S. 481, 491 (2022). The analysis centers on whether the reduced sentence is "sufficient, but not greater than necessary" to achieve those goals. 18 U.S.C. § 3553(a).

## ARGUMENT

**A. This motion is ripe for the Court's review because more than 30 days elapsed since the warden received Mr. Davis's request for compassionate release and the warden denied the request.**

Section 3582(c)(1)(A) permits courts to consider a defendant's compassionate release motion provided that at least 30 days have passed since the warden at the defendant's facility received the defendant's compassionate release request. 18 U.S.C. § 3582(c)(1)(A). Mr. Davis requested relief from the warden of FCI Marion on June 3, 2026. On July 16, 2026, Warden Wadas declined to pursue compassionate release on Mr. Davis's behalf. Ex. A. Thus, this case is ripe for review.

**B. The combination of circumstances amounts to extraordinary and compelling reasons for a sentence reduction to time served.**

Mr. Davis's circumstances cumulatively establish extraordinary and compelling reasons for a sentence reduction to time served in light of: (1) the BOP's failure to protect him from a near-fatal stabbing at USP Beaumont; (2) the harsh and unforeseen conditions of his confinement at USP Beaumont; and (3) his urgent family caretaking needs. *See, e.g.*, *United States v. Woods*, No. 13-cr-00017-SLG, slip op. 8 (D. Alaska Dec. 12, 2023) ("The Court finds that the combination of Mr. Woods's health conditions, caregiver status for his mother, and demonstrated rehabilitation constitute extraordinary and compelling reasons under 'other reasons' pursuant to U.S.S.G. § 1B1.13(b)(5)."); *United States v. Knapp*, No. 19-cr-03, 2023 U.S. Dist. LEXIS 211545, at *3-4 (D. Mont. Nov. 28, 2023) (granting sentence reduction to time served under (b)(5) where the "combined weight" of the movant's circumstances were "similar in gravity" to the enumerated reasons, including medical and mental health issues, strained family relationships, conditions of confinement, and rehabilitation).

*1. The BOP's failure to protect Mr. Davis from a near-fatal attack is an extraordinary and compelling circumstance.*

The BOP's failure to protect Mr. Davis from a near-fatal attack is an extraordinary and compelling circumstance supporting compassionate release. The BOP has a constitutional obligation to protect the individuals in its custody. *Farmer v. Brennan,* 511 U.S. 825, 823 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This includes a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833. Courts have found the severity and lasting impact of serious injuries incurred in BOP custody, including from inmate-on-inmate assaults, to be an extraordinary and compelling circumstance in support of compassionate release. *See, e.g.*, *United States v. Sexton*, No. CR11-383-RSL, 2021 WL 2255151, at *4 (W.D. Wash. June 3, 2021) (concluding "that defendant has established that extraordinary and compelling circumstances exist based on the attack and traumatic injury he suffered during his incarceration"); *United States v. Fields*, 554 F. Supp. 3d 324, 336 (D.N.H. 2021) (finding extraordinary and compelling reasons based on the BOP's misclassification of defendant as a sex offender, causing him to suffer repeated physical abuse from other prisoners).

The Sentencing Commission's policy statement likewise recognizes that serious physical injury inflicted on a defendant while in custody can qualify as an extraordinary and compelling reason for a sentence reduction. Specifically, under U.S.S.G. § 1B1.13(b)(4)(B), an extraordinary and compelling reason exists when a defendant during his term of custody was a victim of "physical abuse resulting in 'serious bodily injury,' that was committed by, or at the direction of, a correctional officer." The Guidelines define "serious bodily injury" as "injury involving extreme physical pain . . . or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1.

Here, the abuse was inflicted by other inmates rather than BOP staff, but the circumstances are otherwise "similar in gravity" for purposes of the "other reasons" catchall. U.S.S.G. § 1B1.13(b)(5). Because the assault on Mr. Davis required medical intervention—surgery and hospitalization in intensive care—it fits within the meaning of "serious bodily injury." *See* Ex. B at 151. And although the injury was not inflicted by staff, the BOP failed to take reasonable measures to protect Mr. Davis, despite a documented history of violent and assaultive behavior at USP Beaumont that the BOP failed to adequately address, or to hold any of his assailants accountable.

The BOP is charged with keeping prisoners safe. *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010) ("[T]he Federal Bureau of Prisons [must] provide for the safekeeping, care, and subsistence of all federal prisoners[.]"). Prison officials would have had good reason to know that Mr. Davis was in danger. Individuals convicted of sex offenses, like Mr. Davis, are particularly vulnerable to violent attacks in custody. *See* Fed. Bureau Prisons, *Sex Offenders*, https://www.bop.gov/ inmates/custody_and_care/sex_offenders.jsp ("The Bureau recognizes sex offenders as a vulnerable population within a prison setting.") (last visited Aug. 8. 2026). "[I]nmates convicted of sex offenses face a deeper, more severe form of exclusion. They are systematically barred from participating in many aspects of prison life and are often subjected to open hostility and contempt. This widespread animosity presents ongoing challenges for prison management and raises serious concerns about the safety and well-being of those in BOP's custody." Walter Pavlo, *Sex Offenders with Autism Face Obstacles in Federal Prison*, PRISONOLOGY (Jul. 31, 2025), https://www.prisonology.com/blog/sex-offenders-with-autism-face-obstacles-in-federal-prison.

USP Beaumont has a documented, decades-long history of failing to protect inmates from violence. Walter Pavlo, *Mounting Problems at Bureau of Prisons Facilities*, Forbes (Mar. 10, 2025), https://www.forbes.com/sites/walterpavlo/2025/03/10/mounting-problems-at-bureau-of-prisons-facilities/ (noting the Beaumont Correctional Complex's "notoriety for its high number of inmate-on-inmate violence incidents, leading to the nickname 'Bloody Beaumont.'"); *see, e.g.*, Scott Lawrence, *FBI investigating fatal fight at U.S. Penitentiary near Beaumont*, 6KFDM (Apr. 1, 2026), https://kfdm.com/news/local/breaking-visitation-suspended-after-fatal-fight-at-us-penitentiary-in-beaumont ("multiple incarcerated individuals fighting" at USP Beaumont leads to one fatality and second person injured); Press Release, U.S. Att'y Office for the E. Dist. of Tex., Inmates Indicted for Murder at Beaumont Federal Prison (Feb. 5, 2026), https://www.justice.gov/usao-edtx/pr/inmates-indicted-murder-beaumont-federal-prison (describing murder indictment for four inmates at Beaumont Federal Correctional Complex for murder of another inmate on November 21, 2025—just ten days before the near-fatal stabbing of Mr. Davis); Press Release, U.S. Att'y Office for the E. Dist. of Tex., Federal inmates charged with assault in Eastern District of Texas (Mar. 6, 2026), https://www.justice.gov/usao-edtx/pr/federal-inmates-charged-assault-eastern-district-texas (describing indictment of six men in connection with armed assault resulting in serious bodily injury arising out of attack on fellow inmate on May 2, 2025, seven months before the stabbing of Mr. Davis); Brett Strahan, *Federal Sentences highlight MS-13's Reach Inside US Prisons After Deadly Beaumont Prison Riot*, 12NEWSNOW (Apr. 29, 2025), https://www.12newsnow.com/article/news/crime/federal-sentences-highlight-ms-13s-reach-inside-us-prisons-after-deadly-beaumont-prison-riot/502-942ec717-7939-4c1c-bac3-8a9f0a80bd33 (describing homicide and prison riot carried out inside a housing unit of USP Beaumont, leading to a national BOP lockdown)); Press Release, Fed.

Bur. Inv., Beaumont Federal Inmate Sentenced for Deadly Assault (Sept. 1, 2014), https://www.fbi.gov/contact-us/field-offices/houston/news/press-releases/beaumont-federal-inmate-sentenced-for-deadly-assault (describing deadly assault by inmates on another inmate within his cell who they incorrectly believed was incarcerated for sex offenses involving children); Gary Hunter, *More Prisoners Murdered in Texas Federal Prisons*, PRISON LEGAL NEWS (Aug. 15. 2008), https://www.prisonlegalnews.org/news/2008/aug/15/more-prisoners-murdered-in-texas-federal-prisons/ ("Erika Joseph said her brother literally feared for his life at USP Beaumont. . . . Prior incidents indicate that Joseph had reason for concern. Keith Barnes was stabbed to death by three prisoners at the Beaumont prison on May 7, 2005. Gabriel Rhone was murdered at the facility on November 28, 2007, also by stabbing.").

The BOP never prosecuted or otherwise disciplined Mr. Davis's assailants. On information and belief, inmate-on-inmate violence is more common at USP Beaumont than even the news sources cited above suggest, with comparatively few incidents resulting in further investigation, let alone prosecution. Numerous instances of rampant violence and lawsuits challenging the harsh conditions of confinement and treatment of inmates at the Beaumont Correctional Complex support this characterization. *E.g. Dickson v. United States*, 11 F. 4th 308, 311-12 (5th Cir. 2021) (describing allegations by inmate convicted of child pornography charges that he was repeatedly assaulted by other inmates, including in front of BOP staff, who did not intervene); *Hill v. Fox*, No. 1:13-CV-440, 2015 WL 10582169 (E.D. Tex. Dec. 15, 2015), *report and recommendation adopted*, No. 1:13-CV-440, 2016 WL 1324224 (E.D. Tex. Apr. 4, 2016) (alleging a number of sexual and physical assaults while living in the USP Beaumont SHU); *Brown v. Armendariz*, No. CIVA 307CV-2154-O BH, 2009 WL 812149, at *2, *9 (N.D. Tex. Mar. 26, 2009) ("[P]laintiff states that he was physically attacked while still incarcerated at USP

Beaumont . . .by two inmates[.]" "Plaintiff avers that Defendant transferred him to a 'known unsafe prison."); Lori Crofford, *Texas Federal Prison Ranked Among Worst in the US*, 101.9 THE BULL (Apr. 18, 2025), https://thebullamarillo.com/beaumont-federal-prison-issues/ ("[T]he prison is full of gang violence between the Sureños and MS-13 gangs. Since 1998, there have been 7 inmate murders or fatal altercations in the USP Beaumont." Another source named "USP Beaumont as one of the worst federal prisons in the US, stating gang violence, but also excessive force and mistreatment of inmates by the correction officers. Also mentioned are the overcrowding and outdated facilities."); Michael Balsamo & Michael R. Sisak, *More Than 120 US Federal Prisons On Lockdown After 2 Texas Inmates Killed During Gang Altercation*, WBALTV11 (Jan. 30, 2022), https://www.wbaltv.com/article/federal-prisons-on-lockdown-after-texas-inmates-killed/38946132 ("[U]nion officials have decried what they've described as a serious staffing crisis at the prison. The AP reported in June that security at the complex is so lax that local law enforcement officials privately joke about its seemingly 'open-door policy.'");

Whether attributable to staffing shortages, indifference of prison guards, or some other reason, it is predictable that the lack of criminal or even disciplinary consequences emboldens inmates inclined to violence to engage in such acts. USP Beaumont failed to adequately safeguard Mr. Davis from being stabbed in his own cell. Instead, despite a history of similar incidents and Mr. Davis's known vulnerability, given his crime of conviction, the defenseless Mr. Davis was ambushed, stabbed, and left for dead. In short, the BOP's failure to protect vulnerable Mr. Davis from a brutal attack at a facility with a history of inmate violence, and, further, its failure to punish the aggressors, constitutes an extraordinary and compelling circumstance and supports a sentence reduction.

*2. The appalling living conditions at USP Beaumont, unforeseen at the time of sentencing, are an extraordinary and compelling circumstance.*

In deciding a request for compassionate release, Courts may consider prison conditions that are harsher than could have been anticipated at the time of sentencing. *See United States v. Scully,* 529 F. Supp. 3d 1190, 1193 (D. Or. 2021) (ruling that "the sentence [Mr. Scully] has served has undoubtedly been harsher than the one originally contemplated at the time of sentencing," and reducing sentence based on COVID-19 pandemic); *United States v. Olawoye,* 477 F. Supp. 3d 1159, 1166 (D. Or. 2020) ("the Court did not intend [the] sentence to 'include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic.'") (citation omitted); *United States v. Brown,* No. ELH-01-377, 2020 WL 5747194, at *1 (D. Md. Sep. 25, 2020) (granting compassionate release for a career offender and finding the harsh conditions at Victorville USP contributed to a finding of extraordinary and compelling circumstances).

The conditions Mr. Davis endured during his incarceration at USP Beaumont were far harsher than what the Court could have anticipated at the time of sentencing and are a basis for compassionate release. At USP Beaumont, despite the known risk factor of Mr. Davis's crime of conviction and a proven history of inmate-on-inmate violence, the prison failed to protect him from a near-fatal attack that took place in his own cell. *Cf. United States v. Brice*, No. 13-CR-206-2, 2022 WL 17721031, at *6 (E.D. Pa. Dec. 15, 2022) (explaining that a woman who had been sexually abused by a prison guard "ha[d] suffered more than necessary to constitute 'just punishment for the offense'" she had committed). Even placement in segregated housing units where Mr. Davis was on lockdown for most of the day failed to protect him from serious violence.

The attack caused Mr. Davis to suffer significant physical and mental trauma. He experiences post-traumatic stress to this day. While the court believed that a lengthy sentence was necessary for just punishment and deterrence, the court could not have intended to put Mr. Davis at daily risk of violence, seclusion, and threats to fulfil this purpose. These circumstances do not amount to just punishment, nor do they promote respect for the law. The unforeseen conditions of Mr. Davis's confinement are an extraordinary and compelling circumstance and support a sentence reduction.

*3. Mr. Davis Sr.'s critical need for a caregiver is an extraordinary and compelling circumstance.*

Under § 1B1.13(b)(3)(C), upon a showing of "the incapacitation of the defendant's parent" and that the defendant is "the only available caregiver for the parent", a court may find extraordinary and compelling circumstances warranting compassionate release. Courts have found extraordinary and compelling circumstances where a defendant's ailing parent receives some caretaking assistance, but the parent's worsening medical conditions and increasing needs surpass the level of care that the available assistance can provide.

Here, Mr. Davis's father suffers from serious and debilitating health conditions that require invasive surgeries and intensive management. Needing a wheelchair, in constant pain, and experiencing short-term memory loss, Mr. Davis Sr. needs consistent daily assistance. Mr. Davis is the only family member available to provide his father with the care and support he requires. Ex. D. Courts have found extraordinary circumstances based on incapacitation of a parent in circumstances that are similar to Mr. Davis's case. *See United States v. Washburn,* No. 1:10-CR-2456-DHU, 2023 WL 3853343 at *3 (D.N.M. June 6, 2023) (finding extraordinary circumstances where defendant's mother's physical and mental health ailments made it difficult to care for herself and prevented her from complying with her extensive medical regime); *United*

*States v. Beebe*, No. 1:19-CR-00002-TMB, 2023 WL 7183886 (D. Alaska Nov. 1, 2023) at *3 (finding that the defendants other family members were unable to effectively serve as a caretaker for defendant's father due to a back injury and anxiety diagnosis); *United States v. Lisi*, 440 F. Supp. 3d 246, 251-52 (S.D.N.Y. 2020) (finding extraordinary and compelling basis for sentence reduction where the needs of the defendant's seriously ill mother exceeded the assistance provided by home health aides and the defendant was the only family member available to provide necessary care)..

In expanding the family circumstances category in the 2023 amendments, the Sentencing Commission acknowledged that "a parent has been the family member most often identified as needing care by courts granting sentence reductions under reductions under § 3582(c)(1)(A)." Amendment 814, U.S.S.G. § 1B1.13, *Reasons for Amendment.* Yet, the BOP denied Mr. Davis's request for compassionate release finding that "caregiving related to family remembers outside of biological or legally adopted children and a spouse or registered partner do not meet criteria for consideration." Ex. A. This determination was plainly wrong. Mr. Davis's family circumstances, specifically his father's urgent physical and mental needs and the lack of other available caretakers, warrants compassionate release.

**C. The 18 U.S.C. § 3553(a) factors support reducing Mr. Davis's sentence to time served.**

Once this Court finds that extraordinary and compelling reasons exist, it must also consider the factors set forth in § 3553(a) to determine whether a sentence reduction is warranted. Post-offense developments are highly relevant to those factors, and the court must consider "the most up-to-date picture" of the defendant's history and characteristics. *Pepper v. United States*, 562 U.S. 476, 490-93 (2011). Here, the § 3553(a) factors weigh in favor of a sentence reduction to time served.

A reduction to time served would "reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). Mr. Davis does not dispute that his crime is serious. However, he was 21 when the crime was committed and was only 23 years old when this Court sentenced him. He now has served 90 percent of his sentence. For almost sixteen years, Mr. Davis has reflected on his behavior and taken responsibility for his actions. Through time and programming, he has learned to lead a more productive life.

Mr. Davis has shown maturity and growth. Most recently, in March 2026, he was moved from USP Beaumont to FCI Marion, an institution with a lower security level. He has worked to ensure that he has the skills and mindset to succeed in the community, engaging in RDAP, anger management, and parenting classes. He reportedly is also on a waitlist for a sex offender management program.

Mr. Davis's actions over the past sixteen years have demonstrated that the purposes of incarceration have been met. Mr. Davis has challenged himself to do better and return to the community a changed person and has taken significant strides to get there. He has taken advantage of available programming and will leave prison with the necessary tools to continue his positive trajectory.

Incarcerating Mr. Davis until the end of his sentence despite his father's deteriorating health and immediate need for care serves no legitimate carceral or punitive purpose under 18 U.S.C. § 3553(a). While the twenty-year sentence may have been appropriate when imposed, Mr. Davis's circumstances have changed. Mr. Davis is the only person able to provide the necessary level of care and support his father requires. Although Mr. Davis's conduct was serious, sixteen years of incarceration away from the community, during which time he suffered a brutal attack and while his father's health declined, has afforded adequate deterrence to any

future criminal conduct. For these reasons, and because Mr. Davis is no longer a danger to the community, this Court should find that the § 3553(a) sentencing factors support his release.

## CONCLUSION

Mr. Davis has demonstrated extraordinary and compelling reasons to grant a sentence reduction, and the 18 U.S.C. § 3553(a) factors further favor release. Mr. Davis respectfully requests that the Court modify Mr. Davis's sentence to time served and amend the conditions of supervised release as requested.

Respectfully submitted on August 20, 2026.

*/s/ Susan Wilk*
Assistant Federal Public Defender